IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHELLE MARTINKO<br>19830 Windwood Ave<br>Euclid, Ohio 44119 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES**<br>**AND REINSTATEMENT** |
| LORI'S GIFTS, INC.<br>c/o Business Fillings Inc.<br>Statutory Agent<br>4400 Easton Commons Way Suite 125.<br>Columbus, Ohio 43219 | )<br>)<br>)<br>)<br>)<br>) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| And | )<br>) | |
| MICHELLE BAILEY<br>6314 Wilmington Court,<br>Loveland, Ohio 45140 | )<br>)<br>) | |
| Defendants. | ) | |

Plaintiff, Michelle Martinko, by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

## PARTIES AND VENUE

1. Martinko is a resident of the city of Euclid, county of Cuyahoga, state of Ohio.

2. Lori's is a foreign corporation with a place of business located at 2500 Metrohealth Drive Cleveland, Ohio 44109.

3. Bailey is a resident of the city of Cleveland, county of Cuyahoga, state of Ohio.

4. Bailey is and was at all times hereinafter mentioned a supervisor and/or manager for Lori's, who acted directly or indirectly in the interest of Lori's in relation to its employees.

5. At times relevant herein, Bailey supervised and/or controlled Martinko's employment with Lori's and was empowered to take tangible employment actions against Martinko.

6. At all times referenced herein, Bailey was an employer within the meaning of Ohio R.C. § 4112.01 (A)(2).

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Martinko is alleging federal law claims regarding the deprivation of Martinko's rights under the American's with Disabilities Act of 1990 as amended. 42 U.S.C. 126 § 12101 *et seq.* and the Age Discrimination in Employment Act of 1967 as amended 29 U.S.C. §§ 621–634.

8. This Court has supplemental jurisdiction over Martinko's state law claims pursuant to 28 U.S.C. § 1367, as Martinko's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

10. All material events alleged in this Complaint occurred in Cuyahoga County.

11. Within 300 days of the conduct alleged below, Martinko filed a Charge of Discrimination with the Equal Opportunity Employment Commission ("EEOC"), Charge No. 532-2020-01920 against Defendant.

12. On or about November 19, 2020, the EEOC issued and mailed a Notice of Right to Sue letter to Martinko regarding the Charge of Discrimination.

13. Martinko received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 1.

14. Martinko filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

15. Martinko has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## FACTS

17. Martinko is a former employee of Defendants.

18. At times relevant herein, Martinko was over the age of 40.

19. Martinko is currently 61 years old.

20. Lori's hired Martinko in 2010 as a store manager.

21. Bailey did not participate in the decision to hire Martinko.

22. In or around 2014, Lori's promoted Martinko to area store manager.

23. Bailey did not participate in the decision to promote Martinko.

24. In or around June 2018, Lori's underwent restructuring and Martinko was assigned a store manager position. ("Reassignment").

25. The Reassignment was not a disciplinary action.

26. Bailey did not participate in Martinko's reassignment.

27. In or around August 2018, Bailey became Martinko's district manager.

28. In or around August 2018, Bailey became Martinko's direct supervisor.

29. Bailey is at least ten years younger than Martinko.

30. Bailey is substantially younger than Martinko.

31. In or around October 2018, and employee named Pam Korovan informed Martinko that Lori's was terminating Korovan's employment.

32. At all times relevant herein, Lori's employed Korovan as a district manager.

33. At all times relevant herein, Korovan was in her 60's.

34. During Martinko's conversation with Korovan, Korovan informed Martinko that Lori's was terminating older employees.

35. Martinko asked Korovan if she should be fearful of termination, as she was 60 years old.

36. Korovan told Martinko that she should be fearful of termination based on her age.

37. In or around October 2018, Martinko fell while at work. ("Fall")

38. Martinko sustained injuries due to her Fall. ("Injuries")

39. Martinko's Injuries included damage to her lower back.

40. As a result of her Injuries, Martinko suffers from chronic pain.

41. As a result of her Injuries, Martinko's mobility was adversely affected.

42. As a result of her Injuries, Martinko is unable to drive long distances without experiencing significant pain and discomfort.

43. Following her Fall, Martinko reported both the Fall and the Injuries to Bailey.

44. Following her Fall, Martinko filed a Workers' Compensation Claim with Lori's for her Injuries.

45. Defendants had knowledge of the Fall.

46. Defendants had knowledge of the Injuries.

47. Martinko's Injuries affect her muscular-skeletal body system.

48. Martinko's Injuries are a physical disorder.

49. Martinko's Injuries relate to a physical disability.

50. Martinko's Injuries substantially limit her ability to perform certain major life activities, such as walking, standing, climbing, and pushing/pulling.

51. Martinko has a record of disability.

52. As a result of her Injuries, Martinko is and was considered disabled within the meaning of the ADA.

53. As a result of her Injuries, Martinko is and was considered disabled within the meaning of R.C. § 4112.01(A)(13) and the ADA.

54. In the alternative, Defendants regarded Martinko as being disabled.

55. In the alternative, the Defendants regard that Martinko's as suffering from a physical impairment.

56. Despite Martinko's disabling condition, she was still able to perform the essential functions of her job.

57. On or around November 27, 2018, Bailey issued Martinko a write up for alleged failure to train her employees on proper guest protocol. ("November Write-Up")

58. Bailey's assertion of Martinko's alleged failure to train her subordinates has no basis in fact.

59. Bailey's assertion of Martinko's alleged failure to train her subordinates did not actually motivate Bailey's decision to issue the November Write-Up.

60. Bailey's assertion of Martinko's alleged failure to train her subordinates was insufficient to motivate the November Write-Up.

61. Bailey's assertion of Martinko's alleged failure to train her subordinates was pretext to issue the November Write-Up

62. Bailey did not issue write-ups similar to the November Write-Up to non-disabled employees.

63. Bailey did not issue write-ups similar to the November Write-Up to employees that were significantly younger than Martinko.

64. Bailey issued the November Write-Up to Martinko because Martinko was in her 60's.

65. Bailey issued the November Write-Up to Martinko because Martinko is disabled.

66. The November Write-Up was an adverse action.

67. The November Write-Up was an adverse employment action.

68. In or around early January 2020, Martinko complained to a Lori's Human Resources employee, Robbi Horton, that she believed the November Write-Up was improper, undeserved, and motivated by discrimination.

69. Martinko complained to Horton that she believed the November Write-Up was unfair.

70. Martinko complained to Horton that she believed that the November Write-Up was based on her age.

71. Martinko complained to Horton that she believed that the November Write-Up was based on her disability.

72. Horton had a duty to report Martinko's Discrimination Complaint to Lori's.

73. Horton reported Martinko's Discrimination Complaint to Lori's.

74. Upon information and belief, Lori's has a policy against discriminating against employees based on their age.

75. Upon information and belief, Lori's has a policy against discriminating against employees based on their disability.

76. Upon information and belief, Lori's has a policy to investigate complaints of discrimination. ("Investigation Policy")

77. Pursuant to the Investigation Policy, an investigation should include interviewing the complainant.

78. Pursuant to the Investigation Policy, an investigation should include interviewing the subject of the complaint.

79. Pursuant to the Investigation Policy, an investigation should include interviewing the subject of the reported discrimination.

80. Pursuant to the Investigation Policy, an investigation should include interviewing witnesses to the reported discrimination.

81. Pursuant to the Investigation Policy, an investigation should include getting a written statement from the complainant.

82. Pursuant to the Investigation Policy, an investigation should include getting a written statement from the subject of the complaint.

83. Pursuant to the Investigation Policy, an investigation should include getting a written statement from the subject of the reported discrimination.

84. In response to Martinko's Discrimination Complaint, Lori's did not interview Martinko.

85. In response to Martinko's Discrimination Complaint, Lori's did not interview Bailey.

86. In response to Martinko's Discrimination Complaint, Lori's did not interview witnesses.

87. In response to Martinko's Discrimination Complaint, Lori's did not get a written statement from Martinko.

88. In response to Martinko's Discrimination Complaint, Lori's did not get a written statement from Bailey.

89. In response to Martinko's Discrimination Complaint, Lori's did not get a written statement from witnesses.

90. Lori's did not investigate Martinko's Discrimination Complaint.

91. Lori's did not discipline Bailey based on Martinko's Discrimination Complaint.

92. By not disciplining Bailey at all based on the Discrimination Complaint, Lori's ratified Bailey's conduct.

93. By not disciplining Bailey at all based on the Discrimination Complaint, Lori's allowed Bailey's conduct to continue.

94. Upon information and belief, Bailey was made aware of Martinko's Discrimination Complaint by Horton.

95. In or around January 2019, Bailey ordered Martinko to travel over an hour for multiple job assignments. ("Travel Orders")

96. The Travel Orders included four off-site nighttime inventories, each an hour drive away from Martinko's home store.

97. The Travel Orders included a drive to Columbus for two hours of training.

98. Prior to Martinko's Injuries, Defendants had never ordered Martinko to conduct off-site nighttime inventories at locations over one hour away.

99. Prior to Martinko's Injuries, Defendants had never ordered Martinko to drive to Columbus for training.

100. Martinko asked Bailey to be excused from the Travel Orders due to her inability to drive long distances without feeling significant pain ("First Accommodation Request").

101. Martinko's First Accommodation Request was reasonable.

102. Martinko's First Accommodation Request did not cause an undue hardship on Defendants.

103. The inventories Martinko had been asked to perform were ordinarily performed by others and could have been performed by others.

104. There was no legitimate business reason that required that only Martinko perform the inventories.

105. Defendants did not determine if Martinko's First Accommodation Request would cause an undue hardship.

106. Defendants have no contemporaneously created documents reflecting any effort to determine if Martinko's First Accommodation Request would cause an undue hardship.

107. After the First Accommodation Request, no one at Lori's engaged in an interactive process to find a reasonable accommodation for Martinko's disability.

108. In response to Martinko's First Accommodation Request, Bailey told Martinko to "just use a pillow" when she drove.

109. Defendants denied Martinko's First Accommodation Request.

110. Denying the First Accommodation Request without engaging in an interactive process is an adverse action.

111. Denying the First Accommodation Request without engaging in an interactive process is an adverse employment action.

112. On March 29, 2019, Martinko received a performance review from Bailey. ("March Review")

113. The March Review reflected that Martinko did not have any disciplinary issues.

114. Defendants did not address any disciplinary issues with Martinko during the March Review.

115. On or around May 30, 2019, Martinko's physician submitted a note to Lori's requesting accommodations, including that Martinko be excused from performing nighttime inventory. ("Second Accommodation Request")

116. Martinko's Second Accommodation Request was reasonable.

117. Martinko's Second Accommodation Request did not cause an undue hardship on Defendants.

118. Defendants did not engage Martinko in any additional discussion regarding her Second Accommodation Request.

119. Following Martinko's Second Accommodation Request, Bailey continued to order Martinko to perform nighttime audits over an hour drive away from Martinko's home store.

120. Defendants disregarded Martinko's Second Accommodation Request.

121. Disregarding Martinko's Second Accommodation Request without completing an interactive process is an adverse action.

122. Disregarding Martinko's Second Accommodation Request without completing an interactive process is an adverse employment action.

123. On or around August 10, 2019, Bailey informed Martinko that Defendants were terminating her employment for alleged insubordination.

124. During the termination, Bailey accused Martinko of insubordination on March 5, 2019.

125. Prior to terminating Martinko, Defendants never issued any written communication criticizing Martinko for alleged insubordination in March 2019.

126. Defendants' assertion of insubordination in March 2019 had no basis in fact.

127. Bailey did not address or record any alleged acts of insubordination during the March Review.

128. During the termination, Bailey accused Martinko of yelling during a discussion they had on July 23, 2019 concerning the management of the Lori's store.

129. Martinko had never yelled while working at the Lori's store.

130. Bailey fabricated her allegation that Martinko had yelled during the July 23, 2019 discussion between Bailey and Martinko.

131. Bailey's assertion that Martinko had yelled did not actually motivate Defendants' decision to terminate Martinko.

132. Bailey's assertion that Martinko had yelled was insufficient to motivate the termination of Martinko.

133. Defendants did not terminate similarly situated, non-disabled managers who had engaged in conduct similar to what Bailey had accused Martinko of.

134. Defendants did not terminate similarly situated managers who were significantly younger than Martinko who had engaged in conduct similar to what Bailey had accused Martinko of.

135. Upon information and belief, subsequent to Martinko's termination, Defendants hired an individual in her 30's to replace Martinko.

136. Defendant's purported justification for terminating Martinko was a pretext for age discrimination.

137. Defendant's purported justification for terminating Martinko was a pretext for disability discrimination.

138. Defendant's purported justification for terminating Martinko was a pretext for retaliation.

139. There was a causal connection between Martinko's age and Defendants' termination of Martinko.

140. There was a causal connection between Martinko's disability and Defendants' termination of Martinko.

141. There was a causal connection between Martinko's Discrimination Complaint and Defendants' termination of Martinko.

142. As a direct and proximate result of Defendant's conduct, Martinko suffered and will continue to suffer damages.

## COUNT I: WRONGFUL TERMINATION BASED ON DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA, 42 U.S.C § 12112(a).
### (Against Defendant Lori's Only).

143. Martinko restates each and every prior paragraph of this Complaint as if it were fully restated herein.

144. At all times referenced herein, Defendants were aware that Martinko was disabled and/or regarded Martniko as disabled.

145. At all times referenced herein, Defendants were aware that Martinko suffered from a physical impairment and/or regarded Martinko as suffering from a physical impairment.

146. Lori's terminated Martinko because of her disability and/or because Lori's regarded Martinko as disabled, in violation of 42 U.S.C § 12112(a).

147. Lori's terminated Martinko because of her physical impairment and/or because Lori's regarded Martinko as suffering from a physical impairment, in violation of 42 U.S.C § 12112(a).

148. As a direct and proximate result of Lori's conduct, Martinko suffered and will continue to suffer damages.

## COUNT II: DISABILITY DISCRIMINATION – FAILURE TO ACCOMODATE IN VIOLATION OF THE ADA, 42 U.S.C § 12112(b)(5)(A).
### (Against Defendant Lori's Only).

149. Martinko restates each and every prior paragraph of this Complaint as if it were fully restated herein.

150. At all times referenced herein, Defendants were aware that Martinko was disabled.

151. Notwithstanding Martinko's disability, she was otherwise qualified to perform the essential functions of her job with reasonable accommodation.

152. Martinko made a reasonable request for accommodation when she requested not to be required to travel over an hour without a break in order to perform inventories and/or to participate in training.

153. Lori's failed to honor Martinko's requested accommodation or to participate in an interactive process to identify alternative accommodations for Martinko, such as allowing Martinko more time to travel to facilitate breaks or to allow Martinko to perform training remotely.

154. An employer's "failure to offer a reasonable accommodation to an otherwise qualified disabled employee is unlawful discrimination" irrespective of whether the employer harbored invidious intent (or discriminatory animus) toward the employee when the employer failed to act. See *Exby-Stolley v. Bd. of Cty. Commrs.*, 979 F.3d 784, 792 (10th Cir.2020); *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 540 (6th Cir.2014).

155. In failing to provide Martinko with a reasonable accommodation, Lori's violated the ADA, 42 U.S.C § 12112(b)(5)(A).

156. As a direct and proximate result of Lori's conduct, Martinko suffered and will continue to suffer damages.

### COUNT III: AGE DISCRIMINATION IN VIOLATION OF THE ADEA.
### (Against Defendant Lori's Only).

157. Martinko restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

158. Martinko, at age 60, was a member of a statutorily-protected class under the ADEA at the time she was terminated from her employment with the Lori's.

159. Martinko was fully qualified for her position and employment with the Lori's.

160. After terminating Martinko, Lori's replaced Martinko with a person who was significantly younger and/or not belonging to the protected class under the ADEA.

161. Lori's violated the ADEA by discriminating against Martinko based on her age.

162. As a direct and proximate result of the Lori's conduct, Martinko suffered and will continue to suffer damages.

### COUNT IV: WRONGFUL TERMINATION BASED ON DISABILITY DISCRIMINATION IN VIOLATION OF O.R.C § 4112.02 *et seq*. (Against All Defendants).

163. Martinko restates each and every prior paragraph of this Complaint as if it were fully restated herein.

164. At all times referenced herein, Defendants were aware that Martinko was disabled and/or regarded Martniko as disabled.

165. At all times referenced herein, Defendants were aware that Martinko suffered from a physical impairment and/or regarded Martinko as suffering from a physical impairment.

166. Lori's terminated Martinko because of her disability and/or because Lori's regarded Martinko as disabled, in violation of O.R.C. § 4112.02.

167. Lori's terminated Martinko because of her physical impairment and/or because Lori's regarded Martinko as suffering from a physical impairment, in violation of O.R.C. § 4112.02.

168. As a direct and proximate result of Lori's conduct, Martinko suffered and will continue to suffer damages.

### COUNT V: DISABILITY DISCRIMINATION - FAILURE TO ACCOMMODATE IN VIOLATION OF O.R.C. 4112.02 *et seq.*

169. Martinko restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

170. Defendants were aware that Martinko suffered from an actual disability or physical impairment.

171. In *Johnson v. Cleveland City School Dist.*, 2011-Ohio-2778, ¶ 60 (8th Dist. Cuyahoga), the Eighth District Court of Appeals explained that "[a] plaintiff who has established that he is disabled for R.C. 4112.02 purposes may establish a discrimination claim by showing that the employer has declined to make a reasonable accommodation to known disabilities if such accommodation would not cause undue hardship on the employer."

172. By refusing Martinko's request for reasonable accommodations for her disability, Defendants discriminated against Martinko.

173. By failing and refuse to participate in an interactive process with Martinko to identify reasonable accommodations for her disability, Defendants discriminated against Martinko.

174. Respondents violated O.R.C. §4112.02 by failing to provide Martinko a reasonable accommodation.

175. As a direct and proximate result of Defendant's conduct, Donner suffered and will continue to suffer economic and emotional distress damages.

## COUNT VI: UNLAWFUL RETALIATION IN VIOLATION OF R.C. §4112.02(I)
### (Against All Defendants).

176. Martinko restates each and every prior paragraph of this Complaint as if it were fully restated herein.

177. As a result of the Defendant's discriminatory conduct described above, Martinko complained about the discrimination she was experiencing from Bailey to Horton.

178. Subsequent to Martinko reporting discrimination to Lori's, Lori's denied Martinko's requests for reasonable accommodation.

179. Subsequent to Martinko reporting discrimination to Lori's, Lori's terminated Martinko's employment.

180. Defendant's actions were retaliatory in nature based on Martinko's opposition to the unlawful discriminatory conduct.

181. Pursuant to O.R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

182. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Martinko, she suffered and will continue to suffer damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Michelle Martinko requests judgment in her favor against Defendant, containing the following relief:

(a) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Martinko for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

(b) Awarding against each Defendant compensatory and monetary damages to compensate Martinko for lost wages, emotional distress, and other consequential damages, in an amount to be proven at trial;

(c) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Martinko for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

(d) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Martinko for harm to her professional and personal reputation and loss of career fulfillment;

(e) An award of damages for any and all other monetary and/or non-monetary losses suffered by Martinko in an amount to be determined at trial, plus prejudgment interest;

(f) An award of punitive damages;

(g) An award of costs that Martinko has incurred in this action, as well as Martinko's reasonable attorneys' fees to the fullest extent permitted by law; and

(h) Awarding such other and further relief that this Court deems necessary and proper.

        Respectfully submitted,

        */s/ Chris P. Wido*
        Chris P. Wido (0090441)
        Samuel B. Robb (0099035)
        **The Spitz Law Firm, LLC**
        25200 Chagrin Boulevard, Suite 200
        Beachwood, OH 44122
        Phone: (216) 291-4744
        Fax:   (216) 291-5744
        Email: chris.wido@spitzlawfirm.com
               sam.robb@spitzlawfirm.com

        *Attorneys For Plaintiff Michelle Martinko*

## JURY DEMAND

Plaintiff Michelle Martinko demands a trial by jury by the maximum number of jurors permitted.

                        */s/ Chris P. Wido*
                        Chris P. Wido (0090441)
                        **The Spitz Law Firm, LLC**